UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:20-CR-03-REW

UNITED STATES OF AMERICA,                                                      PLAINTIFF,

V.                                    RECOMMENDED DISPOSITION

OSCAR JOSHUA CALHOUN,                                                        DEFENDANT.

On February 27, 2020, a grand jury indicted Oscar Calhoun on three counts charging him with distribution of child pornography, in violation of title 18, United States Code section 2252(a)(2). Then, on April 21, 2020, Calhoun moved the Court for an order directing a competency examination, raising the question of whether he was presently competent to stand trial. [R. 19]. The Court granted the motion and, following a forensic review and report submitted by an evaluator with the Federal Bureau of Prisons, Calhoun sought and was granted a second evaluation. The matter then came for a hearing before the undersigned for a hearing with testimony offered by both evaluators regarding Calhoun's competency to stand trial and now stands submitted for a recommendation. Upon consideration of the evidence and for the reasons that follow, the undersigned will recommend that the United States has proven by a preponderance of the evidence that he is competent to stand trial.

STANDARD

Title 18 U.S.C. § 4241(a), instructs that

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and

1

consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

The standard for determining mental competency to stand trial or enter a guilty plea is a high bar: a criminal defendant must lack either a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *accord Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Miller,* 531 F.3d 340, 350 (6th Cir.2008). !In addressing the competency of a defendant, a court may properly consider a wide range of factors, including the defendant's demeanor, medical opinions regarding competency, evidence of irrational behavior, the court's own observations, and the observations of defendant's counsel. *See Drope,* 420 U.S. at 172; *Miller,* 531 F.3d at 348; *Williams v. Bordenkircher,* 696 F.2d 464, 466 (6th Cir.1983); *United States v. Tucker,* 204 F. App'x 518, 520 (6th Cir.2006) (citing *Owens v. Sowders,* 661 F.2d 584, 586 (6th Cir.1981)); *United States v. Jackson,* 179 F. App'x 921, 933 (6th Cir.2006).

## DISCUSSION

At the outset, the parties acknowledged at the competency hearing that the law is unsettled regarding who has the burden of proof; whether the United States to demonstrate competency, or the Defendant to demonstrate the lack of it. However, the parties agreed that the United States should shoulder the burden of showing by a preponderance of the evidence that Calhoun is competent to stand trial. Both parties provided expert reports in advance of the hearing, and both stipulated to the qualifications of those experts and the Court therefore considers the testimony from each.

The experts related similar information in many respects, demonstrating that Calhoun had no difficulty comprehending their questions during the initial interviews, and provided accurate relevant information in response. For instance, both evaluators remarked that during their first contact with Calhoun, he demonstrated an understanding of the reason for the evaluations - that is his competence to proceed, and the limits of confidentiality attendant to the evaluations. Both evaluators remarked that Calhoun "demonstrated understanding and agreed to proceed with the evaluation". Likewise, Calhoun was able to relate to both evaluators the charges he faces in this case, specifically that he has been charged with distribution of child pornography. His personal familial history was likewise consistent during the interviews with both evaluators, including the fact that he was raised by his biological mother and step father in Round Lake, Illinois, but that he was abused by his step-father, who was an alcoholic. He was never married but has fathered two children during a relationship with a woman he intended to marry. He informed both evaluators that he and the maternal mother lost custody of the children. He related attending special education classes in the public-school system during his formal education and was diagnosed as having Attention Deficit Hyperactivity Disorder. He related to both evaluators a history of being arrested and convicted of aggravated sexual abuse in 2013 and was ordered to complete a term of probation. He related being incarcerated after being found to have violated probation. He informed the evaluators of his recent charges in this case, for distribution of child pornography. Finally, he related to both evaluators a history of substance abuse involving marijuana, alcohol, prescription medications, other controlled substances, beginning at an early age and continuing with some substances up until the time of his arrest. He related to both evaluators that he had applied for but been denied social security benefits.

The evidence in the case from Dr. Green is that Calhoun reads on a 4th grade level and exhibited a 7th grade equivalent in sentence comprehension. In addition, Dr. Green administered an Intelligence test, which indicated that Calhoun possesses a full-scale IQ of 67, in the Extremely Low range. Personality testing by both Dr. Green and Dr. Szyhowski yielded invalid results, due to evidence that Calhoun did not "attend appropriately to item content while responding to test items" possibly as a result of confusion, random responding, reading or language difficulties or failure to follow instructions. [R. 43, Defense Exhibit 1, p. 7; R. 35, p. 5].

In addition, the testimony offered at the hearing was as follows:

Dr. David Szyhowski is a forensic psychologist with the Federal Bureau of Prisons. He evaluated Mr. Calhoun on motion of defense counsel, Sebastian Joy. He has conducted 340 evaluations during his employment over the last ten years. He testified that Mr. Calhoun is a 35-year-old individual who was the subject of a competency evaluation that consisted of clinical interviews, psychological assessments, and a review of relevant records. Dr. Szyhowski met with Calhoun on five occasions, with the first occurring in June 2020. In addition, he was under observation for a little more than 60 days at the facility and was observed by staff during that time to behave without delusion or instability.

Generally, Calhoun was an aimable individual, presenting with mild depression. Otherwise he was easy to work with – observations that were consistent across all contacts with him. His educational history was discussed, and Calhoun reported being in special education while in school, being diagnosed with ADHD, some problems with math, but was ultimately able to complete high school. He attempted to enroll in but did not finish college.

Although Calhoun had difficulties in high school, there was no evidence that these difficulties affected his competency to proceed in the case. Calhoun was able to advocate for

4

himself well, took good care of himself, was able to navigate the social environment at the Federal facility and otherwise had no difficulty during the evaluation. Calhoun was not observed to experience any substantial deficits as a result of the prior ADHD diagnosis, and evidenced no reason to lead the evaluator to believe he would lack the ability to make logical decisions or understand the consequences of the decisions, as during clinical interviews, Calhoun was able to provide logical and coherent answers with no indication of a deficit. The way he spoke did not suggest disorganized thought processes. In addition, there was no reason to question his actual memory ability.

He conducted a psychological assessment to engage and evaluate the verbal and nonverbal style in which Mr. Calhoun responds to items of psychological measure. Although in Calhoun's case the assessment was determined to be invalid Calhoun was still able to sit through the assessment, without breaks, follow directions and execute the task to completion suggesting that he had the ability to follow-through on directions.

An assessment of his ability to stand trial is a guided interview administered to Calhoun and indicated that he performed well without giving any significant indications of impairment. He was able to estimate the penalty range and the guideline range as outlined by his attorney. He knew the role of the participants in the process, including his attorney, the prosecutor, the judge, and the jury. He understood the difference between a guilty plea and proceeding to trial. As a result, Dr. Szyhowski believed that Calhoun can make rational decisions, has a stable mental state, and is competent to stand trial.

Hallie East with the FBI testified that she is familiar with Calhoun through her investigation of his online activities. She testified that his online activity involved messaging many other offenders and texting back and for to victims, often being able to rapidly text, communicate and

5

understand the conversation. In her review of the discovery in the case, Calhoun exhibited an understanding of the conversations he was having online with others, and was most often able to lead the conversation, coaching other offenders what to say to children, and recommending the best apps to use to go undetected. She testified that he was the one "steering the ship" in a lot of the conversations

Dr. Megan Green testified that she is a forensic psychologist who was retained to evaluate Calhoun's competency in the case. She spent three hours with him directly at the Pike county Detention Center, one hour in record review and several hours in research and drafting her report. During her practice she has conducted approximately 100 competency evaluations.

She reviewed educational records, the psychological evaluation completed by Dr. Szyhowski and conducted a clinical interview with testing. She concluded that Calhoun suffers from multiple substance abuse disorders, and mild intellectual disability. His prior IQ score of 55 fell into the extremely low range, and he was diagnosed with mild intellectual disability. She testified that this means that he falls in the extremely low range of intellectual functioning, meaning that 99 percent of the population has a higher score on IQ testing than Calhoun. It indicates that he has significant difficulty understanding verbal information, and likely also means he would have difficulty communicating his thoughts. His achievement testing results from the the 11th grade indicated that he read and a second-grade level, his spelling skills were at a 4th grade level and his math skills were at the 2nd grade level. Review of his language skill scores at that time indicated that his language skills were in the extremely low range. For someone to be competent, she testified that the person must understand what is communicated and effectively communicate thoughts in return.

Calhoun's social history indicated that he had difficulty living independently, although he did live with a past fiancé. He has only had brief periods of employment and was never able to maintain employment consistently. Calhoun reported being prescribed medication for ADHD after having trouble with attention and concentration. He reported a history of suicidal ideation, an intentional overdose after his mother's death, and that he is now supposed to be taking medications but is not due to his incarceration. He reported experiencing depression and anxiety, persistent irritability, and sleep disturbance. Dr. Green administered an intelligence test to him, which indicated that his overall mental functioning fell within the extremely low range consistent with mild intellectual disability.

Dr. Green was critical of Dr. Szyhowski, by testifying that he should have administered an IQ and achievement test to Calhoun. In addition, she testified that the personality assessment administered by Szyhowski requires a 9th grade reading level, a level of reading not exhibited by Calhoun.

In summary, Green stated that Calhoun is not competent because he had a poor ability to understand of the concept of the plea agreement, although he did exhibit an adequate understanding of the roles of the participants in the proceedings. He has had discussions with counsel but reports emerging with no better understanding of his case. She concluded that he is not competent to proceed and that competency cannot be restored given the nature of his intellectual disability.

On Cross examination she admitted that Calhoun could identify his attorney, understood what he was charged with, but stated that he was unable to define the prosecutor's role, and was unable to identify potential outcomes of trial or the role of the jury. He understood that the Judge would determine how the case would proceed but was unable to elaborate what the judge's role is in the case. He was alert and oriented in all spheres, meaning that he knows who and where he is,

7

he was cooperative, with speech within normal limits, no perceptual abnormalities, appropriate affect, and with normal remote memory. He identified his attorney and the nature of the charges against him, having met with his attorney 5-6 times. On re-direct she stated that Calhoun graduated from high school in the context of special education. She stated that it appeared to her that he did not understand what his attorney attempted to explain to him.

## CONCLUSION

"[T]he bar for incompetency is high: a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.' " *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). Per the reports of both experts, Calhoun is cooperative with his counsel, understands counsel is on his side, demonstrated that Calhoun could assist him by providing information, and understands that counsel will provide advice to him by telling him what to do. This is corroborated by the evidence in the record that Calhoun was able to engage in conversation with both Dr. Szyhowski and Dr. Green, exhibiting an ability to understand the questions asked of him and communicate information responsive to their inquiries. Although Dr. Green expressed concern that Calhoun lacked the competency to proceed to trial due to his inability to fully explain plea agreement and lacked an understanding of the status of his case, he was able to identify his attorney by name and articulate counsel's role in the case, recount the charges brought against him, understand that he will face a penalty if convicted, understood the role of the jury, to consider guilt, and that the prosecutor works in an adversarial role, and that the judge controls the proceedings. This level of functioning is also supported by the lay witness testimony of Agent Hallie East, who recounted

her familiarity with Calhoun's role in the offenses alleged, stating that he exhibited the ability to rapidly text and or type for the purpose of communicating with others, and exhibited no difficulty understanding the communications sent to him. She testified that he often led the conversations, coaching other offenders on what to say to children, and offered recommendations regarding the best apps that would allow them to go undetected.

Considering the evidence in the case, including the reports and testimony of both evaluators, and the testimony of Agent East, the evidence leads to a conclusion that although Calhoun experiences a mild mental disability, a preponderance of the evidence supports the conclusion that Calhoun is able to understand the nature and circumstances of the proceedings against him and possesses the ability to assist properly in his own defense. He is therefore competent to stand trial. See *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)("low intelligence" cannot "be equated with mental incompetence to stand trial.").

Therefore, IT IS RECOMMENDED that the Court find Oscar Joshua Calhoun competent to face further proceedings.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. FED. R. CIV. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's

objections within fourteen days of being served with a copy of those objections. FED. R. CRIM P. 59(b)(2).

Signed October 28, 2020.



Signed By:
*Edward B. Atkins*    *EBA*
United States Magistrate Judge