UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 7:20-CR-3-REW |
| | ) |
| OSCAR JOSHUA CALHOUN, | ) |
| | ) ORDER |
| Defendant. | ) |
| | ) |
| | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

On October 28, 2020, the Court, via Judge Atkins, held a hearing pursuant to 18 U.S.C. §§ 4241(c) and 4247(d) to assess Defendant's competency to face further proceedings in this case. DE 46. For the reasons discussed below, the Court finds Defendant competent to proceed in this matter.

### I. Background

On February 27, 2020, Defendant was charged with three counts of violating § 18 U.S.C. 2252(a)(2) (knowing distribution of sexually explicit content involving a minor). DE 7. On April 21, 2020, defense counsel, citing Defendant's history of psychiatric disorders and difficulty understanding the charges he faced, moved for a competency hearing pursuant to 18 U.S.C. § 4241. DE 19 at 1. The Court granted the motion on April 22, 2020. DE 22. Dr. David Szyhowski, a forensic psychologist employed by the Bureau of Prisons, evaluated Defendant. DE 35. He produced a report on his findings. DE 35. Defendant then sought, and was granted, funds for a

1

second evaluation. The second evaluation was conducted by forensic psychologist Dr. Megan Green. DE 56 at 52-53. Dr. Green completed a report after her evaluation. DE 56 at 52-53.

On October 6, 2020, Judge Atkins conducted a competency hearing. DE 42. At the hearing, Dr. Szyhowski, Dr. Green, and Special Agent Hallie East of the FBI testified. DE 56.[1] Dr. Szyhowski and Dr. Green testified to their views on Defendant's competency. Special Agent East testified to her investigation-based knowledge of Defendant's communication capacities. DE 56. Dr. Szyhowski testified that he found Defendant "competent to stand trial." DE 46 at 6. Dr. Green testified to the opposite. DE 46 at 88. That difference of opinion is the primary focus of Defendant's objection, and therefore, this assessment of Judge Atkins's recommendation.

Dr. Szyhowski's conclusion (from the designated custodial evaluation at the BOP) that Defendant is competent to stand trial was informed by five separate meetings with Defendant, most for a little over an hour (DE 56 at 11-12); more than sixty days of observation while Defendant was at MCC Chicago; (DE 56 at 12); three separate psychological tests: the Validity Indicator Profile ("VIP")[2] (DE 56 at 18); the Minnesota Multiphasic Personality Inventory II (MMPI-II) (DE 56 at 20-21);[3] and the Evaluation of Competency to Stand Trial, Revised Edition (ECST-R)[4] (DE 56 at 25); and Dr. Szyhowski's professional experience in trial competency

---

[1] Drs. Szyhowski and Green are collectively referred to here and in the Recommended Disposition as "the evaluators."

[2] The verbal and nonverbal results of Defendant's VIP evaluation were "determined to be invalid [ ] based on the standardized computer scoring." DE 56 at 19. However, Dr. Szyhowski still determined from Defendant's behavior while taking the test that Defendant was "still able to sit through the assessment, follow the directions, and then execute the task to its completion, which suggested he does have an underlying capacity to follow through on directions and things of that nature." DE 56 at 21.

[3] Dr. Szyhowski determined this test to be "invalid" based on the "way [Defendant] responded to the questions, but not due to his failure to understand the questions. DE 56 at 23.

[4] ("The ECST-R is a guided interview. It is designed to probe for questions which are related to the three broad areas of the Dusky standard, factual understanding, rational understanding, and ability to consult with counsel'."). DE 56 at 24. Dr. Szyhowski said that Defendant, "performed

evaluations. In the past ten years, he has conducted approximately 340 competency evaluations, all within the federal system. DE 56 at 8.

Dr. Szyhowski found Defendant competent and "capable of making rational decisions." DE 56 at 27. Although he conceded validity issues with Defendant's VIP and MMPI-II exams,[5] the doctor still concluded that Defendant is aware of the charges against him and the penalty those charges carry. DE 56 at 25-26. He also found that Defendant sufficiently understands the roles played in a trial by the prosecutor, defense attorney, judge, and jury and the difference between a guilty plea and going to trial. DE 56 at 26. Defendant even spoke with Dr. Szyhowski about specific provisions he would like to see in his plea agreement and recognized that he would need to talk to his lawyer about those issues. DE 56 at 27. Dr. Szyhowski also did not see any indication that Mr. Calhoun had significant reading comprehension issues. DE 56 at 44.[6]

Accordingly, "based on the totality of [his] report" and in light of his "knowledge, experience, and training and specific evaluation of" Defendant, Dr. Szyhowski found Defendant competent to stand trial. DE 56 at 27. On cross, Dr. Szyhowski stated that he did not believe Defendant's ADHD or low IQ substantively affect the question of his competence. DE 56 at 32. Dr. Szyhowski did not see any reason to believe that Defendant was malingering, a term used for an intentional suppression of abilities to fabricate symptoms. DE 56 at 47.

---

well," on the ECST-R and that the results "did not give any significant indication of impairment." DE 56 at 25.

[5] *See* supra n. 3-4.

[6] To corroborate this finding, Dr. Szyhowski also noted that Defendant completed high school and attended college. DE 56 at 44-45. ("In general, people who are able to complete high school, either via diploma or a General Educational Development, have to display a minimum reading and comprehension and a couple of other categories of academic functioning, which suggested to me that [Defendant] probably had the requisite reading level for most of the items on the MMPI.").

Dr. Megan Green testified to her belief that Defendant is not competent to stand trial. DE 56 at 88. Her finding was informed by a comprehensive, collateral review of Defendant's record, including the evaluation conducted at MCC Chicago and Defendant's educational records (DE 56 at 56-57); one three-hour clinical interview (at the jail) with Defendant, at which she conducted the Wechsler Adult Intelligence Scale, Fourth Edition IQ test (WAIS) (DE 56 at 56, 63), two sets of the Wide Range Achievement Test (WRAT) (DE 56 at 57), and a Personal Assessment Inventory Test (DE 56 at 57); twelve years of practice experience, including her current work at the Department of Veterans Affairs and Hudson Forensic, where she conducts disability evaluations, parental fitness evaluations, custody evaluations, guardian and conservatorship competency evaluations, and criminal competency evaluations (DE 56 at 54). Dr. Green estimates that she has conducted approximately 100 competency evaluations over the past twelve years (DE 56 at 54), although on cross-examination she conceded that this was the first competency evaluation she had ever conducted for a federal district court. DE 56 at 72. Her conclusions about Defendant were memorialized in a nine-page report. DE 56 at 56. The Court has reviewed it fully.

The WAIS test that Dr. Green gave to Defendant revealed he has an IQ of approximately 67, which suggests overall intellectual functioning in the extremely low range. DE 56 at 64. Another IQ test of Defendant conducted more than twenty years ago found him to have an IQ of 55.[7] DE 56 at 32, 65. Although the 12-point improvement in tests is statistically significant, Dr. Green noted that both fall in the "extremely low range" and establish a basis for a diagnosis of

---

[7] An IQ of 55 places a person in "lower than the first percentile in terms of intellectual functioning." DE 56 at 58. Dr. Green interpreted the finding to suggest that Defendant has "significant difficulty understanding [ ] verbally presented information. [ ] And it likely also means that he would have difficulty [ ] communicating his thoughts." DE 56 at 59.

4

mild intellectual disability. DE 56 at 65. Dr. Green elaborated on these, and other findings,[8] including scholastic testing done when Defendant was in high school showing him to perform greatly below grade level,[9] to support her conclusion that Defendant lacks the intellectual capacity to understand the "facts and findings and status of this case." DE 56 at 71.[10] ("Mr. Calhoun had a very poor understanding of the [ ] premise of a plea agreement. [ ] I wouldn't even say that he had a cursory understanding of the functions of a judge, a jury, a prosecutor and a defense attorney, so he appeared to have an inadequate understanding of those constructs."). DE 56 at 70. Accordingly, and based on her experience as a "forensic psychologist and evaluator for competency," Dr. Green concluded that Defendant "is not competent" to proceed. DE 56 at 72. Dr. Green also found several problems with Dr. Szyhowski's report. DE 56 at 68. Specifically, she critiqued Dr. Szyhowski for not administering an achievement test and for administering a test—the MMPI-II—that requires a reading level Defendant does not have. DE 56 at 69. ("So essentially, that examiner administered a test that [ ] Mr. Calhoun is not capable of completing.").[11] Dr. Green, like Dr. Szyhowski, did not find any evidence that Defendant was malingering. DE 56 at 71.

The Court also heard testimony from FBI Special Agent Hallie East. DE 56 at 48. Special Agent East testified that, based on evidence generated from her investigation, she found Defendant

---

[8] Dr. Green also noted that, although Defendant did live with a former fiancé, his fiancé's parents "really managed many of the household tasks, including financial management." DE 56 at 61.

[9] "When [Defendant] had achievement testing in the 11th grade, he read at a second-grade level. His spelling skills were at a fourth-grade level. And his math skills were assessed to be at a second-grade level." DE 56 at 59.

[10] The results of Defendant's WRAT test showed that his reading comprehension was at the second percentile, which correlates to a fourth-grade reading level. DE 56 at 66. Defendant's sentence comprehension was at the fifth percentile, the equivalent of a seventh-grade level. DE 56 at 66.

[11] In her testimony, Dr. Green notes her concerns with Dr. Szyhowski's use of the term "unreliable," rather than invalid. DE 56 at 69-70. Dr. Szyhowski in his own testimony said that he found the MMPI-II test results invalid, albeit for different reasons. DE 56 at 23. ("[T]he test was invalid due to the way [Defendant] responded to the questions, but not due to his failure to understand the questions.").

capable of talking, texting, and communicating with victims and other offenders. DE 56 at 50. Further, she noted that Defendant would sometimes coach other offenders on the best apps to use to avoid detection.[12] He was able to communicate quickly and effectively across digital platforms in discussing the criminal activity and ways to achieve the crime. She characterized him as the leader in these conversations.

After the hearing and upon review of the record, Judge Atkins, after noting that "the bar for incompetency is high" concluded that Defendant is competent to stand trial. *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri*, 95 S. Ct. 896, 904 (1975)). *See also* DE 46 at 6, 8. Judge Atkins found that Defendant, despite his intellectual disability, is still "cooperative with his counsel, understands counsel is on his side" and demonstrated an awareness that he has an active role to play in his own defense and that counsel will assist him by providing advice. DE 46 at 8. Further, Judge Atkins found Special Agent East's testimony on Defendant's communications during the investigation persuasive. DE 46 at 9. Judge Atkins carefully reviewed the full record and conducted a plenary hearing, as well-reflected in the Recommended Disposition, where Judge Atkins found that the evidence preponderantly supported a competency finding.

On November 19, 2020, Defendant objected to that Recommended Disposition. DE 52.[13] Defense counsel argues that the Court should reject the Recommended Disposition because the

---

[12] Trial competence is determined at the time of trial. *Drope*, 95 S. Ct. at 908; *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005). Here, Special Agent East's testimony from her investigation is still relevant because Defendant argues that his incompetence, for static reasons, long predates the investigation that led to the present set of charges.

[13] Although Defendant's Objection was not timely under the deadline set out in Judge Atkins's Recommended Disposition (DE 46), the Court, on its own motion after review of the record, allowed Defendant additional time to file his objection. *See* DE 51. Defendant's objection complied with that updated timeline.

United States did not meet its burden of establishing, by a preponderance of evidence, that Defendant is competent for further proceedings. DE 52. The United States calls the objection impermissibly general and "legally and factually inaccurate." DE 55. The matter, now fully briefed, is ripe for review.[14]

## II.   Discussion

Here, Defendant objects to the Recommended Disposition because, in his view, the recommendation reaches the legally invalid conclusion that Defendant is competent to stand trial. The objection is that the competency conclusion is not supported by the evidence—particularly given the fact that the United States carries the (here, agreed) burden to demonstrate competence with a preponderance of the evidence. DE 52 at 7.

A party making an adequate objection to a magistrate judge's proposed finding on a dispositive question is entitled to *de novo* review from the district judge. Fed. R. Crim. P. 59(b). Here, the Court considers the question of Defendant's competency dispositive. *See, e.g., United States v. Rivera–Guerrero*, 377 F.3d 1064, 1068–69 (9th Cir. 2004) (discussing potentially dispositive nature of competency determinations). The objection must be "clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also* Fed. R. Crim. P. 59(b) ("[A] party may serve and file specific written objections to the proposed findings and recommendations."). Here, the Government argues that Defendant makes an "impermissible general objection." DE 55 at 1. The Court disagrees. Defendant raises a clearly discernable legal claim: The magistrate judge failed to

---

[14] No party sought a new hearing. Judge Atkins did not base his decision on conduct or behavior by Calhoun that he observed. He also did not make any comments suggesting consideration of that factor. This dissuaded the Court from the need for a second hearing.

apply the proper burden in finding Defendant competent to stand trial and therefore his decision is erroneous. Accordingly, the Court proceeds to the question of Defendant's competence to face further proceedings.

Pursuant to § 4241, which codified the Supreme Court's *Dusky* decision, a defendant is competent to stand trial if the defendant has "(1) a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) quoting *Dusky v. United States,* 80 S. Ct. 788, 789 (1960). Accordingly, a defendant who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 95 S. Ct. at 903. In the Sixth Circuit there is no binding authority establishing which party "bears the burden of proof to establish pretrial competency." *United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *10 (E.D. Tenn. Dec. 18, 2013); *see also Dubrule*, 822 F.3d at 876 n.3. However, that uncertainty is material only in the "narrow class" of cases where proof is "in equipoise." *Medina v. California*, 112 S. Ct. 2572, 2579 (1992). The § 4241(d) formulation strongly suggests that Congress assigned the burden to the defense, or at least to the party advocating against competency, by phrasing the hearing result as turning on whether the "court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent[.]" The parties here agreed that the United States would shoulder the proof burden. For the reasons discussed below, the present dispute is not in that narrow class where burden assignment matters due to proof balance.

Mental incompetence is a "high bar to clear," regardless of which party bears the burden. *United States v. Hood*, 827 F. App'x 524, 529 (6th Cir. 2020) quoting *Miller*, 531 F.3d at 350

(internal citations omitted). An intellectual disability does not automatically render the defendant incompetent to stand trial. *Adams v. Haeberlin*, 404 F. App'x 11, 14 (6th Cir. 2010); *see also Atkins v. Virginia*, 122 S. Ct. 2242, 2243 (2002). Instead, incompetence requires the defendant to exhibit a "deep [] breakdown in cognition" so that he lacks the ability to understand the proceedings against him and participate in his own defense. *Hood*, 827 F. App'x at 529 quoting *United States v. Coleman*, 871 F.3d 470, 477 (6th Cir. 2017).

Competency is determined by balancing several factors, including the defendant's past behavior and the medical evidence in the record—including psychological history. *Drope*, 95 S. Ct. at 908; *Dubrule*, 822 F. 3d at 876. Each competency determination should be "tailored to the individualized circumstances of a particular defendant." *Hood*, 827 F. App'x at 529 quoting *Indiana v. Edwards,* 128 S. Ct. 2379, 2380 (2008). No factor "should be viewed in isolation." *Williams v. Bordenkircher*, 696 F.2d 464, 466 n.1 (6th Cir. 1983). Because psychological history is an important consideration, expert evaluation plays an important role in resolving competency questions. *Hood*, 827 F. App'x at 526. When determining what weight to give a reviewing expert's opinion, the Court should consider the length of the evaluation period, the thoroughness of the examiner's observations, and the expert's credentials and experience in evaluating trial competency. *United States v. Franklin*, No. 7:19-MJ-2-REW-EBA, 2020 WL 748181, at *5 (E.D. Ky. Feb. 14, 2020). If more than one expert testifies as to a defendant's trial competency, and the experts' opinions differ, the Court should seek to resolve the discrepancies by thoughtfully considering those same factors. *Dubrule*, 822 F.3d at 877.

Here, the parties agreed that the United States would bear the burden of establishing Defendant's competence to stand trial. DE 46 at 2. Applying the relevant legal standards, including the high bar for trial incompetency, the Court therefore considers whether the evidence in the

9

record shows that Defendant, more likely than not, has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense[.]" *Drope*, 95 S. Ct. at 903. In consideration of the record before it, the Court, on *de novo* review, associates itself with Judge Atkins's able analysis and similarly concludes that Defendant is competent to stand trial. Contrary to the objection, Judge Atkins did assign the burden as the parties agreed; his weighing of the record properly comported.

The primary resources useful in answering the question come from the opposing testimony and reports of Drs. Szyhowski and Green and the factual contributions of Special Agent East. Counsel for Defendant appears to suggest that, because Dr. Szyhowski and Dr. Green reached opposing conclusions on the question of Defendant's competence, then the Government cannot have proven by a preponderance of the evidence that Defendant is competent. ("Even under a cursory review, it's rather clear that the United States did not meet its burden."). DE 52 at 5. However, it surely is not true that the presence of an equal number of experts with contradictory views automatically pushes a dispute into the "narrow class" of cases where proof is "in equipoise." *Medina*, 112 S. Ct. at 2579. When a court confronts differing expert viewpoints, it should evaluate each expert's opinion based on factors like the length of the evaluation period, the thoroughness of the examiner's observations, and the expert's credentials and experience in evaluating competency. *Dubrule*, 822 F.3d at 877; *Adams*, 404 F. App'x at 12.

Dr. Green and Dr. Szyhowski are both well-credentialed to speak to Defendant's competency, though Dr. Szyhowski has triple the evaluations under his belt. Dr. Green, further, has not previously evaluated a person in the federal system. That is Dr. Szyhowski's entire roster. The Court notes the specific concerns that Dr. Green raised with Dr. Szyhowski's conclusions— namely the fact that he did not perform an IQ test and the invalidity of his MMPI-II test. DE 56 at

69-70. Further, the Court also acknowledges that the VIP test Dr. Szyhowski administered had validity issues. DE 56 at 19. Dr. Szyhowski dealt with these matters in his testimony. He discounted the intellectual deficit effects, noting that Calhoun not only graduated high school, he enrolled in college twice. Further, Dr. Szyhowski referenced ADHD as the source for much of Calhoun's academic struggles, perhaps carrying over into adulthood.

Other factors call for giving Dr. Szyhowski's conclusion the greater weight. His examination was based on more personal interaction, spaced over multiple events, and supplemented with weeks of evaluation while Defendant was in the BOP's custody. This yielded a longitudinal aspect that Dr. Green's one-off session does not reflect. Further, he has conducted hundreds of evaluations for federal district court proceedings, while, despite her extensive professional experience, this is Dr. Green's first evaluation of this nature. DE 56 at 72. It is notable to the Court that Dr. Green did not reference *Dusky* or the federal statutory formulation anywhere in her report.

Ultimately, the Court finds, as Judge Atkins did, that the balance comes out in favor of Dr. Szyhowski's conclusion. This alone tips the scales, albeit narrowly, on the preponderance of evidence standard. However, there is also the matter of Special Agent East's testimony. Special Agent East paints a picture of Defendant as capable of not only effectively and quickly communicating with victims and other offenders, but also of initiating conversation and recommending strategies and apps to help avoid detection by law enforcement. DE 56 at 50. None of this is the behavior of someone who meets the high bar for incompetence by lacking "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense[.]" *Drope*, 95 S. Ct. at 903.

There is tension between the reports. However, as Dr. Szyhowski noted, Calhoun functioned independently during his BOP stay and had no difficulty in the interviews or completing the testing. In the competency-specific findings, the evaluator recorded that Calhoun had referenced a prior conviction and plea negotiations relative to that event. Unlike Dr. Green, Dr. Szyhowski employed a testing protocol specific to competency, the ECST-R. This guided interview directly probed Calhoun's views, knowledge, attitudes, and conceptions on multiple competency elements, yielding an opinion in favor of competency. Dr. Green's general discussion lacked the same empirical richness. Further, Calhoun has an educational attainment (and a history of gainful employment, with little intervening unemployment, across an array of jobs) cutting against any inability to cooperate, understand, and assist in the legal context. He also, under BOP watch, followed instructions under lengthy observation, cooperated with others, and demonstrated adequate functioning and adaptability. The Court finds Dr. Szyhowski's views more reliable and sounder on this record. Calhoun's communication skills, per Agent East, also cut against the degree of communicative limitations that Dr. Green claims. If Calhoun can explain and foment the crime, and counsel ways to avoid detection, this suggests he can, rationally and factually, understand case facts and strategize with, assist, and understand counsel.

Accordingly, the Court, consistent with Judge Atkins's recommendation, finds Defendant competent to face further proceedings. The Court also **ORDERS** that Dr. Green's psychiatric report be filed under seal into the record.

This the 17th day of December, 2020.

Signed By:
*Robert E. Wier*  REW
United States District Judge